(10 Misc. Rep. 600.)

## MacVEAGH v. CONTINENTAL TRUST CO. OF CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. December, 1894.)

PARTIES—AUTHORITY TO USE NAME—WHO MAY EXERCISE.

    One M., who owned shares of stock which the officers of the corporation refused to transfer to his name on the books, sold the shares to S. by a writing which declared that he sold them "with all rights and privileges attaching thereto, and all claims arising out of my ownership thereof; and I hereby authorize him to take all such proceedings in my name for his benefit and at his expense as he may be advised are necessary or proper to enforce his rights as the holder of said stock." *Held*, that the authority given to S. was personal to him, and did not pertain to the ownership of the shares, so as to authorize any other person than S. to sue in the name of M.

Action brought in the name of Wayne MacVeagh against the Continental Trust Company of the City of New York and the Denver Union Water Company for an injunction. Plaintiff moves to continue the injunction pendente lite. Denied.

George H. Yeaman, for plaintiff.

Jay & Candler, for defendant Continental Trust Company.

Wm. A. & Walter H. Underwood, for defendant Denver Union Water Company.

PATTERSON, J. This is a motion to continue, pending suit, a temporary injunction which was granted in this action on November 7, 1894, restraining the defendants, the Denver Union Water Company and the Continental Trust Company of the City of New York, their officers, etc., from selling, negotiating, paying out, transferring, or otherwise disposing of any of the bonds of the said Denver Union Water Company, secured by a mortgage or deed of trust made on or about the 20th day of October, 1894, and filed on or about the 1st day of November, 1894, and from verifying such bonds, or any of them, and from delivering, surrendering, or transferring said bonds, or any of them, to any person or corporation, and from transferring to any other person or corporation the trust in said deed expressed. The Denver Union Water Company appears to be the successor of several other corporations organized for similar purposes, and also appears to have acquired certain properties which, as far back as the year 1890, belonged to a corporation styled the "Denver Water Company." That last-named corporation executed a mortgage to the Farmers' Loan & Trust Company of the City of New York, which mortgage covered property then belonging to that corporation, as well as property subsequently to be acquired. The Denver Water Company thereafter conveyed its property to the Denver City Waterworks Company, and in that conveyance was included property acquired by the Denver Water Company after the execution and delivery of the mortgage to the Farmers' Loan & Trust Company. The Denver City Waterworks Company in November, 1890, made and executed a mortgage to the Central Trust Company of New York, as trustee, which mortgage covered all the property acquired by transfer from the Denver

Water Company. In April, 1891, the Denver City Waterworks Company conveyed all its property to the American Waterworks Company of New Jersey, and included all the property which had previously belonged to, and is claimed to have been conveyed by, the Denver Water Company. The mortgage to the Farmers' Loan & Trust Company, and the mortgage to the Central Trust Company of New York, have been foreclosed in the state of Colorado, and such proceedings have been had in those foreclosure actions that decrees have been entered and sales have been made in pursuance, or alleged pursuance, of such decrees. At such sales, which were made by a master or commissioner appointed by the Colorado court, certain persons became the purchasers of the mortgaged property, they acting, it is claimed, in the interest and for the benefit of a corporation called the "Denver Union Water Company," which is one of the defendants in this action. This last-named corporation has become the grantee of all the property described in the foreclosure decrees, including the property which belonged to the Denver Water Company, and which was covered by the mortgage of that company to the Farmers' Loan & Trust Company. The defendant the Denver Union Water Company has executed and delivered to the defendant the Continental Trust Company a mortgage covering the whole of the property purchased at the foreclosure sale, and has authorized the issuance of $8,000,000 of bonds, to which the mortgage last referred to is made collateral, and this mortgage purports to be a first lien on all the property held or owned by the defendant referred to. The complaint contains allegations of fraud, conspiracy, and wrongdoing on the part of all who have been connected with these various corporations from the time of the first mortgage made by the Denver Water Company down to the present time. It is claimed that the first mortgage to the Farmers' Loan & Trust Company was made to cover subsequently acquired property, whereas by the original resolution authorizing the making of the mortgage nothing was intended to be covered but that property which the corporation then owned. It is sought to thus follow, through the mortgage of the second corporation, which was made to the Central Trust Company, and so on down to the mortgage of which the Continental Trust Company is made the trustee, that "subsequently acquired" property of the Denver Water Company which it is claimed was unlawfully brought under the lien of the original mortgage made to the Farmers' Loan & Trust Company; and the prominent feature which is disclosed by the papers is, as claimed by the plaintiff, that by reason of the changes referred to, and the formation and reorganization of companies, and the creation and enforcement of liens, the Denver Union Water Company has now the apparent title and absolute control of valuable property belonging to the Denver Water Company; that the title of the Denver Water Company is affected by the cloud which has been caused by these various reorganizations, and by the attempted unlawful transmission of title to such "subsequently acquired" property; and that the aid of a court of equity is necessary to disentangle the title, and to remove the cloud alleged to be upon it, so that the original company may preserve its rights,

and vindicate its title to that property, which it is claimed does not in equity belong to the defendant water company, and which it therefore has no right to include in its mortgage to the Continental Trust Company. The immediate object of this present action is in aid of a suit brought in Colorado to set aside and vacate (substantially) the decrees of foreclosure above referred to, and to open the whole subject of the litigation in that state, in order that the alleged rights of the Denver Water Company may be adjudicated and established, and the exact purpose of the relief sought here seems to be against the Continental Trust Company merely to prevent the issuance and negotiation of the bonds mentioned in the injunction order which is now before the court for consideration, and thus to prevent further complications in the establishment of the alleged rights of the Denver Water Company.

It will thus appear, from the foregoing sketch of the scope of this litigation, that the present action is one in which the rights of the stockholders of the Denver Water Company are alone involved, so far as the plaintiff is concerned. It is claimed in the complaint that all of the proceedings, from the time of the conveyance by the Denver Water Company to the Denver City Waterworks Company, have been against the protest of the plaintiff, and that all the parties who have been connected with those proceedings subsequent to that time have had full and due notice of that protest. It is perfectly apparent that in such a case as this no one but a qualified plaintiff has any standing in court to assert a right such as that sought to be protected here, and at the threshold of this action the parties promoting it are met with the objection that Mr. Wayne MacVeagh, the nominal plaintiff in this record, has no interest whatever in the subject-matter of the litigation. It is alleged in the complaint that Mr. MacVeagh was, in 1892, the owner of 570 shares of the Denver Water Company's stock, and that he is the owner of those shares at the present time, and that the suit is brought by him for the purpose of protecting his interest as such stockholder. It now appears by the distinct statement of Mr. MacVeagh that he is not a stockholder in the Denver Water Company, and that he has no interest whatever in any of the matters referred to in this suit; and it also appears that Mr. MacVeagh has never authorized, by a distinct authorization, any person to bring any suit for him or in his name connected with the matters set forth in the complaint in this action. Notwithstanding this attitude of Mr. MacVeagh to the litigation, it is claimed on behalf of the promoters of the suit that the action is instituted in Mr. MacVeagh's name by his authority; and although the allegation of the complaint that he is the owner of the shares is entirely too broad, yet, from papers which have been exhibited to the court, the fair inference is that Mr. MacVeagh not only authorized the institution of this action in his name, but that by a contract entered into by him with reference to the 570 shares of stock the authority to make him a plaintiff in this action is distinctly conferred. It appears that on the 19th of December, 1892, Mr. MacVeagh sold his 570 shares of stock to one James S. Shepard, of Canton, Mass. The certificate of this stock was delivered. That certificate did not

stand in the name of Mr. MacVeagh, but in the name of one Robert L. Jones, and the power of attorney on the back of that certificate had been executed in blank by Mr. Jones. Mr. MacVeagh, in the instrument relating to the transfer of the stock to Shepard, declared that he sold the 570 shares, "with all rights and privileges attaching thereto, and all claims arising out of my ownership thereof; and I hereby authorize him [James S. Shepard] to take all such proceedings in my name, for his benefit and at his expense, as he may be advised are necessary or proper to enforce his rights as the holder of said stock; the certificates of said stock, assigned in blank by Robert L. Jones, delivered herewith." It is claimed that this provision of the instrument referred to is sufficient to authorize the bringing of this suit in Mr. MacVeagh's name, because it authorizes the enforcement of any right which Mr. MacVeagh may have had upon any claim arising out of the ownership of the shares, and also because it permits the taking of such proceedings in his name for the benefit of Shepard as Shepard may be advised are necessary in order to enforce his rights as the holder of said stock. I am inclined to the opinion that upon construing this paper with, or in the light of, other matters referred to in the complaint, very strong color is given to the claim that it was the intention of Mr. MacVeagh to authorize the person to whom he sold his stock to use his name in connection with any and all litigation that might be properly advised and instituted for the purpose of protection of all rights that the immediate purchaser from him of the certificate of those shares might have as a shareholder in the Denver Water Company. A reason appears on the face of the complaint for the making of this stipulation of Mr. MacVeagh, and also a reason for the stock not being transferred into the name of Mr. Shepard. It is stated in the complaint that the Denver Waterworks officers refused to make any transfers of stock, although the transfers had been demanded by Mr. MacVeagh from Jones' name to his own of these shares, and all efforts to secure a record legal title to the shares in Mr. MacVeagh were unavailing. This may, and probably does, account for the great latitude of authority which Mr. MacVeagh gave to the purchaser of his shares to institute actions. But these considerations do not dispose of the objection which is made to the maintenance of this action in the name of Mr. MacVeagh. The authority to bring suit to protect the interests of the shareholder was not given by Mr. MacVeagh to all the world; it was not a general roving right, which might accompany the shares in the hands of each and every person to whom they might be successively transferred. It was a right which was distinctly between himself and Mr. Shepard; a right which inhered in Mr. Shepard personally, or, if it was one which could be devolved by Mr. Shepard upon somebody else, it could only pass by assignment. Now, this action is not brought in any way by Mr. Shepard, or in Mr. Shepard's interest as a shareholder. There is no allegation in the complaint, nor can I find anything in the papers, which would justify the conclusion that the suit is brought for any personal right as a stockholder inhering in Mr. Shepard. He does not make an affidavit in this case. On the contrary, it is stated

by Mr. Venner that Mr. Shepard is incapable of making an affidavit by reason of illness. There is an affidavit introduced which tends to show that Mr. Shepard's holding of the stock was only nominal, and that it was for the benefit of certain other parties, including Mr. Venner, who were interested in the Denver waterworks; but, even if that were so, that does not give the right to any other person so interested to bring this action in the name of Mr. Wayne MacVeagh. According to the law of the state of New York, an action must be brought by the real party in interest. Now, the real party in interest upon the transfer or bill of sale appearing in this record is Mr. Shepard, who, under the special circumstances of the case, might perhaps be entitled to bring the suit in the name of Mr. MacVeagh; but Mr. MacVeagh is not a trustee of an express trust for the benefit of every one who may have been interested in a merely nominal ownership of the stock held by Mr. Shepard. As between MacVeagh and Shepard, the contract is one strictly inter partes. There was a sale and a power given to the purchaser for his own use and protection, and nothing else. If Venner and his associates chose to put the matter in this shape, they must act through, and not independently of, Shepard. That Mr. MacVeagh understood he was dealing with Shepard, and no one else, is shown by his letter to Mr. Teller, of May 26, 1893, in which he speaks of what Shepard might do to put himself in a position to bring suit as a stockholder. It is perfectly evident that the whole of this litigation is instigated and controlled by Mr. Venner alone, and not by Shepard, and that Venner's attitude to the whole transaction is one which the court would, on a consideration of the merits of the controversy, have regard to. Estoppels, as affecting him, are of prime importance. Mr. Shepard is, from all that appears in these voluminous papers, a complete stranger to this contest, and is not personally interested in advising, promoting, or carrying it on; and it cannot be maintained simply to protect the possible interests of those who do not stand in the position of stockholders, but seek to enforce a right which is peculiarly and distinctly one pertaining to a stockholder, and to no other person. But we may proceed a step further. Venner does not own the shares. According to his own account, they belong to the United Waterworks Company, limited, still another corporation. Venner says he is president of that corporation; but there is no privity of any kind by contract between Mr. MacVeagh and that company, nor is any resolution of that company shown authorizing this action. I am therefore forced to the conclusion that this suit has not been properly brought in the name of Mr. MacVeagh; that there is no interested plaintiff before the court demanding that relief which can only be accorded to a qualified stockholder; and that the action has been unadvisedly brought in the name of the present plaintiff, which condition of affairs, so far as the learned counsel who brought the suit is concerned, is doubtless due to misinformation respecting the status of Mr. MacVeagh and of Shepard, as is apparent from the allegation in the complaint as to share ownership. That allegation certainly would not have been inserted in the complaint had the learned counsel in charge of this cause been

aware, at the time the action was begun, of the real situation of the parties to it. What has been said would be sufficient to dispose of this motion, but I may add that I have examined the merits of the cause, and find that, even if the action were properly instituted, I should feel it my duty to deny this motion for an injunction on the papers now before the court. It is plain, as has been said before, that the moving spirit in all this litigation, both in Colorado and here, is Mr. Venner, by whom the complaint herein was verified, and who makes the principal affidavit on the motion. His attitude with reference to the whole of this matter has been so inconsistent, so questionable, and so peculiar that his present effort to restrain the operations of this new water company does not commend itself to the consideration of the court, and upon the merits I should leave the determination of the equities of the parties to these complicated transactions to the courts in Colorado, which have, to some extent, passed upon them in two foreclosure actions, and which will undoubtedly be prompt to do justice between the parties if any relief ought to be awarded under the circumstances disclosed in these papers; and this result would be reached more especially because the whole purpose of the action in Colorado, brought in the name of the present plaintiff, is to remove a cloud upon the title to real property in that state, and it is not such a case, in any aspect in which it may now be regarded, as would justify further interference by this court with the reorganization of what appears to be an important enterprise in a foreign jurisdiction. Motion to continue injunction denied, and temporary injunction vacated, with $10 costs.